United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**PLUMBERS AND STEAMFITTERS LOCAL 60 PENSION TRUST,** *individually and on behalf of all others similarly situated,*

Plaintiffs,

v.

**META PLATFORMS, INC.**, *et al.*,

Defendants.

Case No. 4:22-cv-01470-YGR

**ORDER GRANTING MOTION TO DISMISS**

Before the Court is defendants' motion to dismiss plaintiffs' complaint alleging violations of Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934, and regulations promulgated thereunder. For the reasons stated on the record at the July 18, 2023 hearing on the motion and reiterated below, defendants' motion is **GRANTED WITH LEAVE TO AMEND.**[1]

I. Meta's Jedi Blue Agreement with Google

**Statements 1, 6, 10, 15, and 20** fail for myriad reasons. First and primarily, since plaintiffs concede "significant" does not meaningfully modify "competition" and because the Jedi Blue Agreement (the "Agreement") at most *limited* rather than *eliminated* competition between Meta and Google, plaintiffs have not developed an actionable falsity theory. They also have not addressed (let alone rebutted) Judge Castel's finding that the Agreement promotes competition between the companies, nor have they pled with sufficient particularity why Meta had an affirmative obligation to disclose the existence of this *specific* Agreement, among the many others which they routinely execute, to investors. *See Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000) (citation omitted) (plaintiffs must plead their claims with the "high degree of

[1] Defendants' request for judicial notice (Dkt. No. 62) is **GRANTED** on the grounds that the documents are: (i) incorporated by reference in the complaint, (ii) court filings, or (iii) transcripts of investor conference calls, all of which are frequently subject to judicial notice by courts. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (documents incorporated by reference in a complaint); *JGX, Inc. v. Handlery*, 2018 WL 984856, at *2 (N.D. Cal. Feb. 20, 2018) (court filing); *Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *10 (N.D. Cal. Apr. 27, 2017) (taking judicial notice of "transcripts of the conference calls, for the purposes of demonstrating what was disclosed to investors.").

United States District Court
Northern District of California

meticulousness" required under the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rule 9(b) of the Federal Rules of Civil Procedure).

**Statements 2, 7, 11, 16, and 21** are inactionable because plaintiffs fail to sufficiently plead their theory of omission. When plaintiffs allege an omission, the omission is only material if "a *reasonable* investor would have viewed the nondisclosed information as having significantly altered the total mix of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (citation omitted) (emphasis in original). Information must be disclosed if its omission would "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hospital Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Here, plaintiffs argue Meta misled investors by failing to include the "modification" or "termination" of the Agreement in a *non-exhaustive* list of factors that could adversely affect the company's advertising revenue. Plaintiffs do not, however, sufficiently explain how this alleged omission misleads investors under the authority cited above, nor have they pled with particularity how "modification" or "termination" of the Agreement could negatively impact the company's advertising revenue in the first place.

Plaintiffs' challenges to **Statements 4, 9, 14, and 19** also fail. Plaintiffs challenge Meta's representations that advertising revenue growth was "mainly caused by a recovery from declines in advertising demand due to the COVID-19 pandemic" (Statements 9, 14, and 19) or was caused "mostly due to . . . an increase in the number of ads delivered, partially offset by a decrease in the average price per ad." (Statement 4)." They again make an omission argument and again fail to explain why this alleged omission mislead investors under the controlling authority of this circuit. Perhaps this is because of the facts against them: Meta never said the *exclusive* cause of the revenue surges was the COVID-19 recovery or increase in ads delivered, nor did the statements at issue purport to or actually identify each factor leading to the boon in advertising revenue.[2]

[2] Plaintiffs' failure to meaningfully defend their challenges to Statements 2, 4, 7, 9, 11, 14, 19, and 21 in their opposition provides an additional, independent grounds for dismissing their claims regarding these statements as "not fully developed." *See Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 334 n.3 (N.D. Cal. 2018).

II. Apple iOS Privacy Changes

Plaintiffs' challenges to language in **Statements 12 and 17** regarding Apple's iOS 14 privacy changes' impact on Meta's "targeting and measurement capabilities" and "advertising revenue growth" fail because plaintiffs have not adequately pled that the adverse consequences of the changes had, as a factual matter, materially and significantly impacted Meta's business as of Q2 and Q3 2021. The Court declines to credit testimony from plaintiffs' confidential witness to the contrary because (i) plaintiffs do not plead additional facts to support the truth of the witness's observations, (ii) on those grounds, the Court looks to whether plaintiffs have provided a sufficient basis for concluding the witness had access to the information they purport to relay, and (iii) the Court finds that no such basis exists. *See Glazer Capital Management, LP v. Forescout Technologies, Inc.*, 63 F.4th 747, 767 (9th Cir. 2023).

III. Meta's Introduction of Reels

For **Statements 3, 8, 13, and 18** to be actionable, plaintiffs must have pled that the introduction of Meta's short-form videos ("Reels") had a negative impact on Meta's business during Q2 and Q3 2021. Plaintiffs failed, however, to: (i) adequately plead this was the case (aside from a bald assertion that it was), and (ii) their theory that the February 2, 2022 earnings call operated as a corrective disclosure fails to persuade because the statements on the call to which they cite were taken out of context.[3] *Desaigoudar*, 223 F.3d at 1022 (articulating the exacting pleading standard applicable to plaintiffs' securities claims).

IV. Defendant Sandberg's Alleged Misconduct

**Statement 23** is inactionable because plaintiffs have not alleged facts to support their bald assertion that defendant Sandberg's decision to leave her role as Meta's Chief Operating Officer ("COO") was motivated by the company's internal investigation of personal assistance she allegedly received. They therefore have no falsity theory upon which to stand.

[3] The Court notes that plaintiffs conceded on the record at the July 18, 2023 hearing that Statements 3 and 8 are *not* actionable because they were made before Reels Ads were launched on Instagram or Facebook. For that reason, it would have been obvious to the average investor that cannibalization of user engagement through Reels negatively impacted Meta's advertising revenue since, during that period, Meta had not yet begun monetizing Reels through ads.

Plaintiffs have also failed to state Section 10(b) or 14(a) claims regarding **Statements 5 and 22**. Their theory of falsity with respect to their Section 10(b) claims is that the challenged statements, which appeared in proxy statements provided to company shareholders, failed to disclose that defendant Sandberg received personal assistance from the company in violation of the Meta Code of Conduct. However, as a preliminary matter, plaintiffs' allegations, even if credited, do not establish that Sandberg received such assistance; their allegations are drawn from press reports concerning an *investigation* conducted by Meta regarding the alleged improper assistance. As defendants' correctly note, Meta has no "duty to disclose uncharged, unadjudicated wrongdoing," such as the existence of an in-progress investigation. *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Banke A/S*, 11 F.4th 90, 98 (2d. Cir. 2021). Furthermore, plaintiffs' pleadings are deficient because they do not contain allegations concerning the materiality of the alleged personal assistance in light of Sandberg's substantial compensation, nor have plaintiffs adequately grappled with whether her alleged receipt of assistance on "personal" matters was potentially helpful to the company (and its shareholders) since her public reputation is concededly integral to the company's success.

With respect to their Section 14(a) claims, plaintiffs argue they satisfy the "essential link"[4] requirement because "the loss-generating corporate actions were the election of [d]efendant Sandberg as COO and the approval of her compensation package." There are several things wrong with this sentence. First, defendant Sandberg was never "elected" COO. The proxy statements concern her election as a company *director*.[5] Plaintiffs do not address this. Second, no vote was held authorizing Sandberg's compensation as COO. Instead, the proxy statements describe a *non-binding*, "say on pay" vote in which shareholders could simply express an opinion as to Sandberg's COO compensation.

---

[4] *See Knollenberg v. Harmonic, Inc.*, 152 Fed. App'x. 674, 682 (9th Cir. 2005) (explaining the "essential link" requirement).

[5] At the hearing, plaintiffs' counsel speculated that Meta shareholders would not have elected Sandberg a company director if her receipt of personal assistance had been disclosed. This is argument was not made in plaintiffs' amended complaint, or even in their opposition. As such, the Court does not consider it.

These shortcomings are fatal to plaintiffs' Section 14(a) claims. As defendants correctly note, a non-binding "say on pay" vote cannot form the basis of an "essential link" under Section 14(a). *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1085 (1991) (holding that, to form an essential link under Section 14(a), "the proxy solicitation" must be "essential in the sense" that it "links a directors' proposal with the *votes legally required to authorize the action proposed*.") (emphasis supplied). Here, shareholders did not hold a binding vote on Sandberg's compensation. Since plaintiffs link their claims to allegedly incomplete disclosures as to Sandberg's compensation, and no vote was held thereon, plaintiffs fail to state a Section 14(a) claim.

* * *

For the reasons stated on the record and reiterated herein, defendants' motion to dismiss is **GRANTED WITH LEAVE TO AMEND.** Plaintiffs shall file their Second Amended Complaint no later than **September 18, 2023**.[6] Defendants shall have until **October 31, 2023** to file a response.

This terminates docket number 61.

**IT IS SO ORDERED.**

Dated: July 21, 2023

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

[6] Plaintiffs are reminded to timely provide the Court, as well as opposing counsel, a redline showing how the Second Amended Complaint revised the Amended Complaint.