1   LATHAM & WATKINS LLP
    Melanie M. Blunschi (CA Bar No. 234264)
2     *melanie.blunschi@lw.com*
    Nicholas Rosellini (CA Bar No. 316080)
3     *nick.rosellini@lw.com*
    505 Montgomery Street, Suite 2000
4   San Francisco, CA 94111
    Telephone: +1.415.391.0600
5
    Andrew B. Clubok (*pro hac vice*)
6     *andrew.clubok@lw.com*
    Susan E. Engel (*pro hac vice*)
7     *susan.engel@lw.com*
    555 Eleventh Street, N.W., Suite 1000
8   Washington, D.C. 20004-1304
    Telephone: +1.202.637.2200
9
    *Attorneys for Defendants Meta Platforms, Inc.,*
10  *Mark Zuckerberg, David Wehner, Sheryl Sandberg,*
    *and Susan Li*
11
                  UNITED STATES DISTRICT COURT
12
                 NORTHERN DISTRICT OF CALIFORNIA
13
                        OAKLAND DIVISION
14
    PLUMBERS AND STEAMFITTERS          Case No. 4:22-cv-01470-YGR
15  LOCAL 60 PENSION TRUST, Individually
    and on Behalf of All Others Similarly   **DEFENDANTS' REPLY IN SUPPORT OF**
16  Situated,                           **MOTION TO DISMISS THE AMENDED**
                                        **COMPLAINT FOR VIOLATIONS OF THE**
17                 Plaintiffs,          **FEDERAL SECURITIES LAWS**
18         v.
                                        Date:  April 16, 2024
19  META PLATFORMS, INC., MARK          Time:  2:00 p.m.
    ZUCKERBERG, DAVID WEHNER,           Court:  Courtroom 1, 4th Floor
20  SHERYL SANDBERG, and SUSAN LI,      Judge:  Hon. Yvonne Gonzalez Rogers
21                 Defendants.
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM.  COMPLAINT
CASE NO. 4:22-cv-01470-YGR

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    ARGUMENT ............................................................................................................ 2

    A.     The Allegations About iOS Privacy Changes Must Be Dismissed
    Again ............................................................................................................. 2

        1.     The Old Challenged Statement Was Not False Or
        Misleading ........................................................................................ 2

        2.     The New Challenged Statements Were Not False Or
        Misleading ........................................................................................ 5

        3.     Plaintiffs Also Fail To Plead Loss Causation ................................. 7

    B.     The Allegations About The Reels Introduction Must Be Dismissed
    Again ............................................................................................................. 8

        1.     The Old Challenged Statement Was Not False Or
        Misleading ........................................................................................ 8

        2.     The New Challenged Statements Were Not False Or
        Misleading ........................................................................................ 9

    C.     The Allegations About Sandberg's Compensation Must Be
    Dismissed Again ......................................................................................... 10

        1.     Plaintiffs Still Have Not Pled An Actionable Misstatement ......... 11

        2.     There Is Still No Essential Link To Support The Section
        14(a) Claim .................................................................................... 12

    D.     There Is Still No Strong Inference Of Scienter ........................................ 13

        1.     Plaintiffs' iOS Scienter Theory Makes No Sense ........................ 13

        2.     Plaintiffs' Reels Scienter Theory Makes No Sense ...................... 14

        3.     Plaintiffs' Scienter Theory Regarding Sandberg's Conduct
        Also Fails ....................................................................................... 15

III.   CONCLUSION ....................................................................................................... 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM. COMPLAINT
CASE NO. 4:22-cv-01470-YGR

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4
*Baker v. Twitter, Inc.*,
   2023 WL 6932568 (C.D. Cal. Aug. 25, 2023)........................................................................ 11

5

*Benavidez v. Cnty. Of San Diego*,
6
   993 F.3d 1134 (9th Cir. 2021) ............................................................................................... 11

7
*Boykin v. K12, Inc.*,
   54 F.4th 175 (4th Cir. 2022) ............................................................................................ 14, 15
8

*Brody v. Transitional Hosps. Corp.*,
9
   280 F.3d 997 (9th Cir. 2002) ................................................................................................... 2

10
*Castro v. ABM Indus., Inc.*,
   325 F.R.D. 332 (N.D. Cal. 2018) ............................................................................................ 6
11

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
12
   856 F.3d 605 (9th Cir. 2017) ................................................................................................... 6

13

*Cowin v. Bresler*,
14
   741 F.2d 410 (D.C. Cir. 1984) .............................................................................................. 13

15
*In re Alphabet, Inc. Securities Litigation*,
   1 F.4th 687 (9th Cir. 2021) ...................................................................................................... 3
16

17
*In re Facebook, Inc. Securities Litigation*,
   87 F.4th 934 (9th Cir. 2023) .................................................................................................... 3

18

*In re Leapfrog Enter., Inc. Sec. Litig.*,
19
   200 F. Supp. 3d 987 (N.D. Cal. 2016) ................................................................................. 3, 9

20
*In re Maxim Integ. Prod., Inc., Deriv. Litig.*,
   574 F. Supp. 2d 1046 (N.D. Cal. 2008) ................................................................................ 13
21

22
*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ............................................................................................... 14

23

*In re Oracle Corp. Sec. Litig.*,
24
   627 F.3d 376 (9th Cir. 2010) ................................................................................................... 5

25
*In re Paypal Holdings, Inc. S'holder Deriv. Litig.*,
   2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ......................................................................... 13
26

27
*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ................................................................................................. 14

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM.  COMPLAINT
CASE NO. 4:22-cv-01470-YGR

*Kasilingam v. Stitch Fix, Inc.*,
   2022 WL 10966359 (9th Cir. Oct. 19, 2022) (unpub.) ............................................................ 9

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) .................................................................................................. 7

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) .............................................................................................. 1, 14

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) .................................................................................................................. 6

*Petrie v. Elec. Game Card, Inc.*,
   2011 WL 13130015 (C.D. Cal. Oct. 19, 2011) ...................................................................... 14

*Police Ret. Sys. Of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ........................................................................................ 3, 8, 10

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) .................................................................................................... 7

*Weston Family P'ship LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022) ........................................................................................... 6, 9, 12

**STATUTES**

15 U.S.C. § 78u-4(b)(2)(A) .......................................................................................................... 13

**RULES**

17 C.F.R. § 229.105 .................................................................................................................... 4, 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANTS' REPLY ISO MOT. TO DISMISS SEC.
AM.  COMPLAINT
CASE NO. 4:22-cv-01470-YGR

## I.    INTRODUCTION

Plaintiffs' opposition lays bare the weakness of the Second Amended Complaint ("SAC"). Plaintiffs claim to have cured purportedly limited flaws identified in the Court's written dismissal order but ignore (at 1-2) that the order expressly incorporated many other "reasons stated on the record" that demanded dismissal.  FAC Order at 1.  Plaintiffs have not solved the first set of issues and scarcely address the latter—much less grappled with the additional defects that the Court did not reach given "all of the problems" with their prior complaint.  Hr'g Tr. 73:16-23.  Plaintiffs have not met—and having had three chances already, cannot meet—the "heightened pleading requirements" applicable here.  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020).

Plaintiffs fail to allege an actionable misstatement that caused their losses.  On the iOS changes, Plaintiffs claim investors were led to believe that the iOS changes were benign or immaterial, even though Defendants repeatedly said the opposite.  And Plaintiffs double down on mischaracterizing a forward-looking projection for 2022, while ignoring that Meta *met* its Q4 2021 revenue guidance.  On Reels, Plaintiffs similarly twist Defendants' words, ignore vital context, and rely on generic or vague statements that could not have misled anyone.  As for their Sandberg allegations, Plaintiffs make two dispositive concessions—that Defendants had no duty to admit unadjudicated accusations and that Sandberg could reimburse Meta for any improper assistance, if any were found someday.  Plaintiffs' allegations regarding Sandberg are wholly unsupported.

Plaintiffs are even weaker on scienter.  After first insinuating (at 2) that the Court already found scienter—when the Court's ruling did not even reach that issue—Plaintiffs offer a scienter theory that makes no sense.  They argue that Defendants tried to inflate Meta's stock price by *repeatedly expressing concern* about the actual and potential impacts of the iOS changes—just not using Plaintiffs' preferred language—only to see Meta's stock drop immediately.  And despite the stock drops, Plaintiffs claim Defendants tried to keep Meta's stock price up for a few short months, without making any suspicious stock sales, before voluntarily revealing the truth.  That is not a compelling scheme to defraud the market.  Similarly, for Reels, Plaintiffs claim that Defendants falsely asserted that Reels was already profitable by *repeatedly telling investors* that the product was monetizing more slowly than older products and that Meta was prioritizing long-term gains

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM.  COMPLAINT
CASE NO. 4:22-cv-01470-YGR

1   over short-term returns.  That is not a cogent plan to inflate stock prices, either.  So too of Plaintiffs'

2   theory that Defendants sought to mislead investors by not preemptively disclosing allegations from

3   press articles, which to this day have not been substantiated or resulted in any change to Sandberg's

4   reported compensation.  Across the board, the innocent explanation is far more compelling:  At

5   every turn, Defendants worked to keep investors informed as accurately as they could amidst

6   significant uncertainty.

7          Given these independently dispositive and incurable defects, there is no need to drag out

8   this meritless lawsuit any longer.  This case should be dismissed with prejudice.

9   **II.     ARGUMENT**

10         **A.     The Allegations About iOS Privacy Changes Must Be Dismissed Again**

11         Plaintiffs' iOS changes arguments are riddled with flaws, but their most glaring error is

12  asserting that Defendants "affirmatively create[d] an impression" that the iOS changes were

13  benign or immaterial.  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

14  Defendants told investors *not* to draw that inference, while warning that the iOS changes were

15  "significant," "very challenging," and "fundamentally profound."  Mot. at 2-4.  Indeed, Meta's

16  stock *dropped* after each challenged statement from Q2 and Q3 concerning the iOS changes.

17  *See id.* at 1, 4, 13.  And when Meta's stock dropped again after Q4, Plaintiffs' own analyst reports

18  confirmed that investors were surprised by projections for 2022, not any newly revealed truth about

19  2021. *See id.* at 17.  Plaintiffs have thus failed to adequately plead falsity or loss causation.

20         **1.     The Old Challenged Statement Was Not False Or Misleading**

21         Plaintiffs' opposition leads with their challenge to **Statements 1a and 1b**, which this Court

22  correctly found meritless.  These Q2 and Q3 risk disclosures stated that: (i) the iOS changes "have

23  limited our ability to target and measure the effectiveness of ads on our platform and negatively

24  impacted our advertising revenue"; and (ii) "if we are unable to mitigate these developments as

25  they take further effect in the future, our targeting and measurement capabilities will be *materially*

26  and adversely affected, which would in turn *significantly* impact our future advertising revenue

27  growth."  (Emphasis added.)  Plaintiffs claim (at 8) that omitting "significantly" and "materially"

28  from the first (retrospective) sentence, while using them in the second (prospective) sentence,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM.  COMPLAINT
CASE NO. 4:22-cv-01470-YGR

1    "implied that the current impact was not yet material" and that "the risk of a *material* adverse

2    effect from the iOS privacy changes was merely hypothetical."  But no reasonable investor could

3    have taken the absence of adverbs in the retrospective portion of **Statements 1a and 1b** to mean

4    that the existing impact was not material—particularly because Defendants explicitly told them

5    not to.  Wehner and Li made clear that Meta "was *declining* to characterize the extent or materiality

6    of the impact" in these disclosures, Opp. at 10 (emphasis added), and letting hard financial data

7    speak for itself.  *See* Ex. 17 at 6.  Plaintiffs nowhere dispute the accuracy of that financial data.

8           The rest of "the context in which [**Statements 1a and 1b**] were made is key" as well.

9    *Police Ret. Sys. Of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014).

10   Defendants warned all along that the iOS changes would be "very problematic," Ex. 5 at 15, stated

11   after Q2 that they were already proving "very challenging," Ex. 16 at 14, and declared after Q3

12   that they had been "fundamentally profound," Ex. 22 at 7.  Plaintiffs respond (at 13) that

13   Defendants said the iOS changes had been problematic and challenging *for advertisers*, and that

14   Meta was "working with them to help" provide "solutions."  True, but as this Court noted,

15   "[e]verybody knows" Meta "makes its money" through "advertisements."  Hr'g Tr. 59:18-20.

16   Investors can put two and two together.  Plaintiffs also assert (at 13) that Defendants said the iOS

17   changes were "fundamentally profound," "*not* that the *impact*" was "profound."  This is splitting

18   hairs.  Defendants said that "additional privacy features" included with another iOS upgrade were

19   not "as *significant* a headwind as the iOS 14 [privacy] changes"—the changes at issue here—

20   "which were *fundamentally profound*."  Ex. 22 at 7 (emphasis added).  The upshot of this

21   statement, like the others, was obvious:  The iOS 14 changes were a big deal.  All this "put

22   [**Statements 1a and 1b**] in context" and "substantially mitigat[ed]" any "potentially misleading"

23   ambiguity.  *In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1003-04 (N.D. Cal. 2016).[1]

---

[1]  Plaintiffs' reliance (at 8) on *In re Alphabet, Inc. Securities Litigation*, 1 F.4th 687 (9th Cir. 2021), and *In re Facebook, Inc. Securities Litigation*, 87 F.4th 934 (9th Cir. 2023), is misplaced.  In *Alphabet*, the challenged statements stated that "[t]here have been no material changes to our risk factors," even though an internal memorandum had "identified" severe "security vulnerabilities." 1 F.4th at 702.  And in *Facebook*, the challenged statements did not explicitly inform investors about alleged misuse of users' data that was purportedly "known" already.  87 F.4th at 951.  Here, by contrast, the iOS changes were no secret.  And **Statements 1a and 1b** flagged that the iOS changes had *already* "negatively impacted" Meta's business, SAC ¶¶ 235, 243, precisely the kind of past tense disclosure that the Ninth Circuit found missing in *Alphabet* and *Facebook*.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM. COMPLAINT
CASE NO. 4:22-cv-01470-YGR

1    Plaintiffs nevertheless insist (at 8 n.2) that Defendants should have "edited" **Statements**

2  **1a and 1b**—but don't say how.  Apparently, Plaintiffs think Defendants had to use the adverbs

3  "significantly" and "materially" in the retrospective part of these statements, not just in the

4  prospective portion.  This word-choice quibble cannot support a securities-fraud claim.  Even read

5  in isolation, **Statements 1a and 1b** did not imply anything about the extent of the existing impact.

6  Using adverbs in the prospective sentence was consistent with 17 C.F.R. § 229.105's command to

7  list "material" risk factors about Meta's future.  Mot. at 16.  And Meta's concededly accurate

8  financial disclosures after Q2 and Q3 enabled investors to assess for themselves how the company

9  had been weathering the iOS storm, with no need for additional color commentary.  *Id.* at 17.

10  Plaintiffs do not even try to refute either point.  Nor do they grapple with the damning reality that

11  Meta's February 2, 2022 Form 10-K used *identical* adverb-free phrasing in describing the impact

12  that had been felt through Q4 2021.  *Id.* at 16.

13    At any rate, the adverbs "significantly" and "materially" are too vague to support a claim,

14  as this Court recognized.  *See* Mot. at 16.  Plaintiffs bemoan (at 11) supposedly "selective

15  quotations," but the Court said:  "The word 'significant' cannot be, in and of itself, sufficient for

16  a securities violation," Hr'g Tr. 12:6-8, and "material" is "meaningless . . . without understanding"

17  the "substance" behind it, *id.* at 40:23-41:2.  Plaintiffs counter (at 11) that "material" is "'capable

18  of objective verification,' using SEC guidelines, under which revenue impacts greater than 5% are

19  presumptively material"—and then concoct back-of-the-envelope calculations of a different

20  metric ("net income") to distract from the fact that revenue decreases in Q2 were less than 5%.

21  There are several problems with this approach.  First, the SEC warns that this 5% figure is just

22  "a 'rule of thumb,'" not some magical threshold that confers materiality.  SEC, Staff Accounting

23  Bulletin No. 99, 64 FR 45150-01 (1999).  Second, **Statements 1a and 1b** discussed "advertising

24  revenue," not net income.  And third, as Defendants explained but Plaintiffs ignore, "significantly"

25  (not "materially") is the only modifier Meta used to characterize potential future *revenue* effects

26  (as distinct from targeting and measurement effects).  Mot. at 16.

27    Plaintiffs fall back to arguing (at 11) that **Statements 1a and 1b** *must* have been misleading

28  because "J.P. Morgan" called the Q2 and Q3 impacts "'much bigger than expected.'"  But

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM.  COMPLAINT
CASE NO. 4:22-cv-01470-YGR

J.P. Morgan was referring to the "iOS headwind of ~$10B" that was "expected in 2022," not the Q2 or Q3 impact for 2021.  Ex. 31 at 1.  J.P. Morgan also recognized that Meta *met* its revenue guidance for Q4 2021.  *Id.* at 4; *see* Mot. at 17.  The other analysts Plaintiffs cite were likewise surprised only by the projected $10 billion impact for 2022, not past results for 2021.  *See, e.g.*, Ex. 32 at 1 (observing that Meta's "Q4 results [for 2021] were OK, but the Q1 outlook [for 2022] was meaningfully below expectations); Ex. 29 at 1; Ex. 33 at 1.  Indeed, no analyst claims to have been confused by **Statements 1a and 1b**.  *See* Exs. 30-34.  That is because no reasonable investor would have been misled, particularly given the surrounding context.

**2.**     **The New Challenged Statements Were Not False Or Misleading**

Plaintiffs fare no better trying to defend (at 12-15) their belated challenges to various statements that (i) noted the Q2 and Q3 impacts from the iOS changes were "in line" with Meta's expectations and (ii) discussed the company's efforts to mitigate the impact to the extent possible.

**"In Line" With Expectations (Statements 4a-4e)**.  The SAC had two falsity theories, but Plaintiffs defend only one of them.  Plaintiffs do not dispute that their first theory—i.e., alleging that Meta "conducted internal studies calculating the impact" of the iOS changes, SAC ¶ 121—fails because Meta had no duty to "reveal [any such] internal projections." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 391 (9th Cir. 2010); *see* Mot. at 13.  Plaintiffs instead focus on their second theory—i.e., that Wehner said after Q1 that "we think" the impact "will be manageable," SAC ¶ 73, so the "in line" with expectations statements purportedly assured investors that the Q2 and Q3 impacts were immaterial.  This theory is meritless too.

First, Meta's expectations were grim all along, *supra* at 3, and "manageable" means "capable of being managed"—*not* "immaterial." *Manageable*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/manageable (last visited Feb. 15, 2024).  Wehner's Q1 statement said only that Meta believed it could manage this serious problem, not that the problem was minor.  Indeed, he warned that Meta was "concerned" about the iOS changes.  Ex. 11 at 11.  And after Q4, Wehner *again* said the impact "was in line with our expectations"—which was true, given Meta's low expectations and accurate Q4 revenue forecast.  Ex. 25 at 10.  Defendants' motion explained all of this.  *See* Mot. at 12-14.  Plaintiffs grapple with none of it.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM. COMPLAINT
CASE NO. 4:22-cv-01470-YGR

Second, Wehner's Q1 statement was an opinion:  He said "we think" the impact "will be manageable."  SAC ¶ 73.  So to the extent **Statements 4a-4e** reiterated that sentiment—which is the crux of Plaintiffs' logic—those statements are also inactionable opinions.  *See* Mot. at 14. Plaintiffs' rejoinder (at 13 n.7) that these "were falsifiable statements of fact about whether the actual measured impact" was "consistent with Meta's forecasts" makes no sense:  Wehner merely told investors that he believed the impact would be manageable, and Meta prudently *declined* to provide numerical forecasts.  *See* Mot. at 3-4.  Plaintiffs are also wrong to claim (at 14-15) that "opinions are actionable" anytime they are "not 'fairly align[ed] with the information in [the speaker's] possession at the time.'"  Opinions are *in*actionable, except where (i) "the speaker did not hold the belief she professed," (ii) a "supporting fact [the speaker] supplied [is] untrue," or (iii) the statement omits "facts going to the basis for the issuer's opinion" in a misleading way. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184-85, 188 (2015)).  Plaintiffs do not—and cannot—do any of that.

Third, calling something manageable is too "imprecise" to be even potentially actionable. *Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 621 (9th Cir. 2022).  Plaintiffs don't disagree, insisting instead (at 13-14) that "no such precision was required" if "investors would have understood ['manageable'] to mean that the impact was materially different from an impact that would give rise to an annualized $10B revenue headwind."  But Plaintiffs cite no authority suggesting that inactionable puffery can magically become actionable in this way.  And as explained, that $10 billion figure was a projection for the iOS impact *going forward* in 2022; analysts were *not* surprised by Meta's 2021 performance.  *See supra* at 4-5.

**Mitigation Efforts (Statements 5a, 5c & 5d)**.  On the challenged statements related to mitigation, Plaintiffs do not address **Statement 5a** and have thus forfeited any challenge to it. *See Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 335 n.3 (N.D. Cal. 2018) (Gonzalez Rogers, J.). As for **Statements 5c and 5d**—i.e., Li's Q3 remark that "*I think* the underreporting of web conversions has really been a bigger issue than we expected," and Sandberg's Q3 prognostication that, "[o]n measurement, *we think* we can address more than half of that underreporting by the end

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM.  COMPLAINT
CASE NO. 4:22-cv-01470-YGR

1  of the year"—Plaintiffs' responses fail.  SAC ¶¶ 239, 241 (emphasis added).

2        Plaintiffs have no answer for the fact that both are inactionable opinions, apart from their

3  dead-wrong reading of *Omnicare*.  *See supra* at 6.  They also continue to mischaracterize both

4  statements.  Plaintiffs claim (at 14) that **Statement 5c** asserted "that the iOS impact largely resulted

5  from Meta's underreporting of web conversions."  That is not what Li said.  Li stated that, in her

6  view, underreporting had been "a bigger issue" than anticipated—not that it was the biggest issue

7  caused by the iOS changes.  Mot. at 15.  Plaintiffs also claim (at 14) that **Statement 5d** asserted

8  that "underreporting" was "one of the two 'big challenges' coming from [the iOS] changes."  That

9  is not what Sandberg said either.  Sandberg remarked that "targeting" and "measurement" more

10  generally were the "two big challenges" facing Meta.  *Id.*

11        At any rate, Plaintiffs cannot get around the fact that they are impermissibly pleading

12  "[f]raud by hindsight."  *Ronconi v. Larkin*, 253 F.3d 423, 430 n.12 (9th Cir. 2001).  Their only

13  response is to say (at 15) that Li's statement "made clear that Meta was tracking the impact of the

14  underreporting in real time."  Not so.  No allegations suggest that Defendants had the power to

15  divine instantaneously exactly how complicated technical issues caused by the iOS changes would

16  play out across Meta's billions of users and millions of advertisers.  What Plaintiffs' allegations

17  actually show is that Meta could more precisely discern these effects later on, with the benefit of

18  more time, more data, and more analysis.  That is not fraud.

19           **3.**    **Plaintiffs Also Fail To Plead Loss Causation**

20        Plaintiffs' loss causation theory fails for the same reason it did before:  They have not pled

21  a "corrective disclosure" that "revealed the [purported] truth" and "caused [Meta's] stock price to

22  drop."  *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016); *see* Mot. at 17-18.

23        Plaintiffs continue to misconstrue Wehner's projection of a "$10 billion" headwind for

24  2022 as somehow "reveal[ing] that Meta had misled investors" about the preceding year.  SAC

25  ¶ 130.  That is wrong.  Plaintiffs accept that Meta's financial numbers for Q2 and Q3 were accurate

26  and—again—Meta *met* its numerical revenue guidance for Q4 2021.  What some investors saw as

27  surprising was not anything Meta said about 2021, but Meta's forward-looking guidance for 2022,

28  which was "below" expectations.  Ex. 30 at 1; *see supra* at 4-5.  For that reason, the Court correctly

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM.  COMPLAINT
CASE NO. 4:22-cv-01470-YGR

1  rejected Plaintiffs' supposed "extrapolation" of the "forward-looking" $10 billion figure. Hr'g Tr.

2  47:19-48:1. And the Court reprimanded Plaintiffs' counsel, noting that this misleading tactic was

3  "not appreciated." Hr'g Tr. 47:1-3. Plaintiffs' assertion (at 16) that "[t]he Court rightly did not

4  mention loss causation" as to the iOS changes "at the Hearing" blinks reality.

5          Plaintiffs' other loss causation arguments are equally off-base. They rely (at 15) on the

6  fact that "85% of users" had installed iOS 14 by June 2021—but Meta disclosed that figure months

7  earlier. *See* SAC ¶ 100. Plaintiffs further assert (at 15 n.9) that Wehner and Li's other Q4

8  remarks—i.e., that the iOS changes "really impacted our growth rates in Q3 and Q4," *id.* ¶ 130,

9  and were "still" causing "significant targeting and measurement headwinds," *id.* ¶ 131—told

10  investors facts that "Defendants had never previously revealed." That is just wrong. *See, e.g.*,

11  Ex. 21 at 5 (noting after Q3 that targeting and measurement were even "more difficult," and that

12  "if it wasn't for [iOS], we would have seen positive quarter-over-quarter revenue growth").

13        **B.**      **The Allegations About The Reels Introduction Must Be Dismissed Again**

14          Plaintiffs' Reels allegations likewise fail for many reasons, and here too their opposition

15  fails to grapple with the core problem: Over and over again, Defendants emphasized that they

16  were following their usual long-term launch strategy for Reels, while telling investors that Reels

17  was monetizing more slowly than, and competing with, more established offerings. *See* Mot. at

18  5-7, 18-19. Plus, monetization efforts were in their nascent stages on Instagram—and nowhere

19  near even that point on Facebook. This "context" is "key." *Intuitive Surgical*, 759 F.3d at 1060.

20  Plaintiffs' willful blindness to it confirms the weakness of their falsity theory.

21        **1.**      **The Old Challenged Statement Was Not False Or Misleading**

22          Plaintiffs' opposition leads with their challenge to **Statements 2a and 2b**, which cautioned

23  that: (1) "We also may introduce new features or other changes to existing products" that "attract

24  users away from" older products with "more proven means of monetization"; and (2) "from time

25  to time, these efforts have reduced, and may in the future reduce, engagement with" some products

26  "in favor of" others "that we monetize less successfully or that are not growing as quickly," which

27  in turn "may adversely affect our business and results of operations and may not produce the

28  long-term benefits that we expect." Plaintiffs' arguments are as meritless as before. Mot. at 19-20.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM. COMPLAINT
CASE NO. 4:22-cv-01470-YGR

1    This Court pinpointed the core problem: **Statements 2a and 2b** were "generic"—i.e., they

2    referred to product launches generally, not Reels in particular—and therefore did not "open[] the

3    door" to an omissions claim. Hr'g Tr. 57:16-58:20. Plaintiffs assert (at 18) that this "dialogue" at

4    the July 18 hearing was "not a conclusion." Defendants understood otherwise, but regardless, the

5    Court was exactly right: **Statements 2a and 2b** "only generally describe[]" the risks inherent in

6    product launches across the board, without saying anything specific to Reels. *Kasilingam v. Stitch*

7    *Fix, Inc.*, 2022 WL 10966359, at *2 (9th Cir. Oct. 19, 2022) (unpub.). So these statements did not

8    create an "obligation to offer an instantaneous update of every internal development" about Reels,

9    especially given "the oft-tortuous path of product development." *Twitter*, 29 F.4th at 620.

10    Plaintiffs respond (at 18) that "the SAC newly alleges that 'Reels was the only new product

11    introduced during the Class Period,'" while faulting Defendants for "offer[ing] no argument for

12    why [this fact] would not eliminate any concerns about the genericness" of these risk disclosures.

13    Plaintiffs apparently missed page 20 of Defendants' motion, which explained that "Meta's

14    discussion of 'material [risk] factors,' 17 C.F.R. § 229.105, had to cover past, present, and future

15    product launches," making clear that these risk disclosures—in place since 2013—did not "refer[]

16    *only* to the here-and-now Reels launch." Mot. at 20. And again, the reference to Reels in the same

17    risk disclosure in Meta's February 3, 2022 Form 10-K just proves that this longstanding language

18    covers product launches generally, including, *but not limited to*, Reels. *See id.* at 20 n.5.

19    What Defendants *did* say about Reels in other statements not challenged here—i.e., that

20    Meta was pursuing its usual long-term launch strategy, Reels was monetizing more slowly than,

21    and competing with, Meta's existing offerings, and monetization efforts were just beginning—

22    "mitigat[ed]" any conceivable confusion. *In re Leapfrog*, 200 F. Supp. 3d at 1003-04. As the

23    Court agreed, "everybody in the world knew [Meta's] growth strategy [wa]s to drive folks to

24    Reels," even though Meta had put "no ads whatsoever on Reels on Facebook and only recently

25    started ads on Instagram." Hr'g Tr. 54:19-55:1. No reasonable investor could have been misled.

26        **2.    The New Challenged Statements Were Not False Or Misleading**

27    Plaintiffs' attempts to defend their challenges to **Statements 6a and 6b** fail as well. Both

28    were made on Q2 earnings calls on July 28, 2021, yet Plaintiffs have pled *zero* facts suggesting a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM. COMPLAINT
CASE NO. 4:22-cv-01470-YGR

1    negative impact from Reels during Q2.  The only argument they advance (at 18) is that Defendants

2    later said that Reels "adversely affected advertising revenue growth in the second half of 2021."

3    But Q2 was in the *first* half of 2021—and Q2 is the only quarter relevant to **Statements 6a and**

4    **6b** (and **Statement 2a**, for that matter).  So Plaintiffs still do not "adequately plead" that Reels

5    "had a negative impact on Meta's business during Q2."  FAC Order at 3.  That alone is dispositive.

6    Plaintiffs also mischaracterize what Sandberg and Wehner said in **Statements 6a and 6b**—

7    and cannot escape that both are inactionable as a matter of law.  Mot. at 18-19.  In **Statement 6a**,

8    Sandberg said "we're seeing very strong growth in video monetization across, Watch, Feed, [and]

9    Reels."  Plaintiffs claim (at 19) this was false because Sandberg asserted that Reels was profitable

10   overall but "Meta was not experiencing *any* economic growth" from Reels.  But Sandberg said

11   only that revenues earned from selling ads on video products (including Reels) were growing, not

12   that those products were profitable overall.  SAC ¶ 229.  Plaintiffs have pled no facts suggesting

13   *that* was untrue.  And they nowhere dispute that "strong" is textbook puffery anyway.  Mot. at 18.

14   Regarding **Statement 6b**, Plaintiffs attack Wehner's remark that "Reels is going well,"

15   claiming (at 19) that Reels was "not 'going well'" because it was supposedly "losing money"

16   overall.  And they further assert (at 19-20) that this statement was not puffery because it was an

17   "objectively verifiable" representation that "Reels was currently financially successful."  All of

18   that is wrong.  Plaintiffs ignore the "context" of this innocuous statement.  *Intuitive Surgical*, 759

19   F.3d at 1060.  Again, Defendants repeatedly said that Meta was following the same "playbook" as

20   prior product launches—growing engagement with Reels first, and then slowly monetizing the

21   product over time.  *See* Mot. at 5-7.  Any reasonable investor would thus understand "going well"

22   to mean seeing engagement growing, not that Reels was unexpectedly net-profitable just *six weeks*

23   after ads launched on Instagram, as Plaintiffs baldly assert.  And regardless, Wehner's loosely

24   positive characterization simply is not actionable under the securities laws.  *Id.* at 19.

25   **C.      The Allegations About Sandberg's Compensation Must Be Dismissed Again**

26   Plaintiffs' opposition confirms that they cannot show that Sandberg's compensation was

27   misstated.  And on their Section 14(a) claim, Plaintiffs' opposition rests their essential-link theory

28   on mere bad press about unfounded accusations—which is insufficient as a matter of law.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM. COMPLAINT
CASE NO. 4:22-cv-01470-YGR

**1.      Plaintiffs Still Have Not Pled An Actionable Misstatement**

Plaintiffs' opposition gives the game away:  It concedes (at 22) that "the Court [wa]s certainly correct that Defendants were not required *sua sponte* 'to disclose uncharged, unadjudicated wrongdoing.'"  Exactly:  Defendants had no duty to preemptively admit Plaintiffs' accusations in the challenged proxy statements, particularly since, at the time, those accusations had not even been levied, let alone confirmed.  *See, e.g.*, *Baker v. Twitter, Inc.*, 2023 WL 6932568, at *8 (C.D. Cal. Aug. 25, 2023).   This is especially true because Plaintiffs rely solely on unconfirmed news reports, and they have not alleged any actual finding of wrongdoing or change to Sandberg's reported compensation.  That is dispositive, as this Court held.  FAC Order at 4.

Plaintiffs are also stuck with their concession that Sandberg could simply reimburse Meta for the value of any assistance deemed personal in hindsight.  Without citing any authority, Plaintiffs claim (at 25 n.19) that "the federal securities laws do not allow for do-overs."  But SEC guidance provides that something is *not* "a perquisite or other personal benefit"—and "the company need not report" it—if the recipient "has actually fully reimbursed the company."  SEC Guidelines, Question 119.07, https://www.sec.gov/divisions/corpfin/guidance/regs-kinterp.htm (last visited Feb. 15, 2024).  That, too, independently forecloses Plaintiffs' claims.

Plaintiffs argue (at 23) that they have satisfied Rule 9(b) by alleging "what statements were misleading, who made them, where and when they were made, and how they are misleading" because that gives "'defendants notice of the particular misconduct'" alleged.  Plaintiffs are wrong. Their conclusory allegations do *not* provide notice of what specific assistance was supposedly personal in nature.   While Plaintiffs claim (at 23) to have described what Meta *said* in the challenged proxy statements, they have not provided legally required details about what Meta employees allegedly *did* to render the challenged compensation disclosures misleading.  *See* Mot. at 20-21.  Plaintiffs vague, unsourced, and unconfirmed press reports are insufficient.  Without supporting facts, Plaintiffs cannot establish that Sandberg's earnings were misstated.  *See Benavidez v. Cnty. Of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (observing that Rule 9(b) is designed not just to provide notice but also to "deter[]" speculative or abusive lawsuits).

Plaintiffs scarcely defend the SAC's focus on alleged assistance "in writing and

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM.  COMPLAINT
CASE NO. 4:22-cv-01470-YGR

promoting" Sandberg's two books. *See* SAC ¶¶ 153-66. Contrary to Plaintiffs' perfunctory rejoinder (at 23 n.16), there is nothing "melodramatic" about criticizing their blatant distortion of Option B's acknowledgements, which do not suggest that colleagues were conscripted into supporting Sandberg on company time. *See* Mot. at 21. And in any event, both books came out long before the earliest compensation period at issue. *See* Mot. at 21. While Plaintiffs claim (at 23) that Meta had "an ongoing duty to correct" its disclosures, any assistance leading up to book releases in 2017 and 2013 cannot have called for a correction regarding 2018 compensation.

Plaintiffs do not dispute that their Kotick allegations are unchanged. And as before, Plaintiffs have not offered *any* details about what Meta employees allegedly did in 2019. Their only specifics concern action taken by Meta employees in 2016 and Sandberg herself in 2019, which are irrelevant. *See* SAC ¶¶ 147-52. Plaintiffs respond (at 23) with the SAC's allegation that "'from 2016 up to and including 2019, Mr. Kotick and Defendant Sandberg regularly tapped employees . . . for public-relations advice.'" But that conclusory allegation does not detail the "who," "what," or "how" of any 2019 conduct, as Rule 9(b) requires. *Twitter*, 29 F.4th at 619. Plaintiffs also miss the point in relying (at 22) on SEC guidance that a "personal benefit" can "be provided for some business reason or for the convenience of the company." The SAC's allegation that the "team" included not just "Facebook employees," but also "outside advisers," SAC ¶ 147, suggests only that Meta employees (representing Meta's interests) coordinated with Sandberg's privately retained P.R. personnel (representing her interests). Such coordination was appropriate, since Sandberg's "reputation is concededly integral to the company's success." FAC Order at 4.

Finally, Plaintiffs offer a half-hearted footnote (at 23 n.15) on their implausible claims about Sandberg's wedding. That footnote does not solve the core problem this Court identified: The SAC gives "[n]o details" about who supposedly helped Sandberg or what they allegedly did. Hr'g Tr. 71:21-24. Plaintiffs' sole support for their bald allegation that Meta personnel helped plan her wedding is their tortured effort to transform a denial of wrongdoing into an admission of guilt. That is no cure for the complete absence of supporting factual allegations.

**2.    There Is Still No Essential Link To Support The Section 14(a) Claim**

Section 14(a) requires Plaintiffs to plead that their losses were the "result of the corporate

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM. COMPLAINT
CASE NO. 4:22-cv-01470-YGR

1  action authorized by [the allegedly misleading] proxy statement." *Cowin v. Bresler*, 741 F.2d 410,

2  428 (D.C. Cir. 1984); *accord In re Paypal Holdings, Inc. S'holder Deriv. Litig.*, 2018 WL 466527,

3  at *4 (N.D. Cal. Jan. 18, 2018).   Having struck out on their prior attempts to satisfy this

4  essential-link requirement, Plaintiffs' opposition tries (at 24) another theory:   "The Proxy

5  Statements authorized the election of [Sandberg] as director," and she was the subject of "an

6  embarrassing scandal," which in turn caused a stock drop.   That doesn't work.   Negative news

7  articles based on unconfirmed reports of alleged past conduct are "only an incident to the election

8  of directors and not actionable under section 14(a)." *Cowin*, 741 F.2d at 428; *see* Mot. at 22.

9      Plaintiffs respond (at 24 n.18) that *Cowin* involved "'continued fraudulent acts' following

10  an election," whereas "here, the loss-causing corporate action was the election of a director with

11  an undisclosed scandal."   That factual distinction makes no legal difference.   The core teaching of

12  *Cowin* is that losses stemming from something merely "incident to the election of directors," rather

13  than "resulting directly from" their election, is "not actionable" as a matter of law.   *Cowin*, 741

14  F.2d at 428.   Bad press about an elected director's alleged prior conduct is just as incidental as any

15  subsequent misfeasance—indeed, even more so.[2]   There is no essential link.

16      **D.      There Is Still No Strong Inference Of Scienter**

17      There is another, perhaps even more straightforward basis for dismissing this opportunistic

18  lawsuit:   Plaintiffs cannot show a "strong inference" of scienter.   15 U.S.C. § 78u-4(b)(2)(A).

19  Plaintiffs do not claim that anyone made suspicious stock sales.   Mot. at 23.   They do not refute

20  the fact that Meta's stock repurchase program gave Defendants every reason *not* to inflate the

21  company's stock price.   *See id.*   And their scienter theory fundamentally makes no sense.   As

22  before, Plaintiffs' claims fail without even reaching scienter, but the stark gap between their

23  allegations and the exacting standards for pleading scienter cuts another clear path to dismissal.

24      **1.      Plaintiffs' iOS Scienter Theory Makes No Sense**

25      Plaintiffs' iOS scienter theory—that Defendants inflated Meta's stock price by falsely

26  "assuring" the market that the iOS changes were no big deal—does not hold up.   Again, Defendants

27

28  [2]  Plaintiffs' reliance (at 24) on *In re Maxim Integ. Prod., Inc., Deriv. Litig.*, 574 F. Supp. 2d 1046 (N.D. Cal. 2008), is thus misplaced.   *Maxim* is "distinguishable," as it "involved directors accused of backdating stock options" directly voted on by shareholders.   *Paypal*, 2018 WL 466527, at *4.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM.  COMPLAINT
CASE NO. 4:22-cv-01470-YGR

1    repeatedly warned investors about the challenges and ongoing business harms. Mot. at 2-4.  They

2    disclaimed any suggestion that the impact was immaterial.  *Id*.  And after each of the challenged

3    statements, Meta's stock price *dropped*.  *Id*.  If Defendants really "aimed to inflate [Meta's] share

4    price," they "could have chosen far less ambiguous language than [they] did."  *Boykin v. K12, Inc.*,

5    54 F.4th 175, 186 (4th Cir. 2022).  All of this forecloses any inference of scienter.

6         Plaintiffs respond (at 17) that Defendants tried "to mitigate the impact of the iOS privacy"

7    in the hopes "that their mitigation efforts would succeed by Q4."  But Plaintiffs don't explain how

8    or to what end.  Meta's financial disclosures were concededly accurate all along, and Meta *met* the

9    Q4 revenue guidance it provided after Q3.  *Supra* at 5.  And again, there were no suspicious stock

10   sales, while the stock repurchase program was a powerful reason *not* to inflate Meta's stock price.

11   Plaintiffs' theory simply "does not make a whole lot of sense."  *Nguyen*, 962 F.3d at 415.

12        Plaintiffs fall back on the assertion (at 16-17 & n.11) that merely alleging knowledge of

13   the iOS changes' impact shows scienter.  That is wrong:  What matters "is 'not whether defendants

14   had knowledge of certain undisclosed facts,'" but instead whether they "knew or should have

15   known that their failure to disclose those facts 'present[ed] a danger of misleading.'"  *Petrie v.*

16   *Elec. Game Card, Inc.*, 2011 WL 13130015, at *7 (C.D. Cal. Oct. 19, 2011).  That is why the

17   Ninth Circuit affirmed dismissal in *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046 (9th Cir. 2014),

18   where the complaint "plausibly allege[d] knowledge" of an undisclosed manufacturing problem

19   but did "not plausibly allege that [the defendants] intentionally misled investors, or acted with

20   deliberate recklessness, by not disclosing the problem sooner."  *Id.* at 1056-57; *accord In re Rigel*

21   *Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 883 (9th Cir. 2012).  Plaintiffs, in short, need compelling

22   allegations of deliberate or severely reckless intent to mislead investors—which they do not have.

### 2.    Plaintiffs' Reels Scienter Theory Makes No Sense

24        Plaintiffs' Reels scienter theory fails for similar reasons.  Again, Defendants repeatedly

25   told investors that Meta was pursuing the same growth-first-monetization-later strategy it had used

26   with prior product launches.  *See* Mot. at 1, 5-7.  Defendants consistently warned that Reels was

27   "monetizing at lower rates" and that it was "still very early on the advertising front."  *Id.*  And here

28   too, Meta's stock price *dropped* after the challenged statements.  *Id.* at 24.  None of this squares

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM.  COMPLAINT
CASE NO. 4:22-cv-01470-YGR

1    with a supposed scheme "to inflate [Meta's] share price." *K12*, 54 F.4th at 186.

2         Plaintiffs speculate (at 21) that Defendants wanted to "avoid[] any negative disclosure" by

3    "wait[ing] until Reels was positively impacting [Meta's] business to comment."  But Defendants

4    stood to gain nothing from such delay.  Meta's financial numbers were also undisputedly accurate.

5    And Defendants *did* keep investors apprised of how Reels was progressing, telling them that

6    engagement and monetization were growing, while cautioning that Reels was monetizing more

7    slowly than, and competing with, other established products. *See* Mot. at 5-7.

8         Plaintiffs' bald assertion (at 20) that "Defendants knew that [Reels] was negatively

9    impacting Meta's business during" Q2 and Q3 changes nothing.  For one thing, as just explained,

10   merely alleging knowledge of an undisclosed fact is insufficient.  For another, Plaintiffs'

11   allegations do *not* show contemporaneous knowledge about a negative Q2 or Q3 impact.  They

12   have zero facts on Q2. *See supra* at 9-10.  And even as to Q3, Meta's Q4 disclosure that Reels

13   "adversely affected advertising revenue in the second half of 2021" does not show Meta knew this

14   by the end of Q3, rather than later on. *See* Mot. at 24-25 n.8.

15            **3.    Plaintiffs' Scienter Theory Regarding Sandberg's Conduct Also Fails**

16        Plaintiffs' Sandberg allegations also fall far short of a strong inference of scienter.[3]  The

17   notion that Defendants deliberately or recklessly misled investors by not admitting unsubstantiated

18   accusations that did not result in any change to Sandberg's reported compensation defeats itself.

19   Plaintiffs' ipse dixit response (at 25) that Sandberg necessarily knows what she herself did is

20   plainly insufficient to establish scienter.  Plaintiffs were required to plead particularized allegations

21   showing that Sandberg understood that she'd received improper personal benefits from Meta and

22   that she nevertheless deliberately or recklessly caused the company to fail to disclose those benefits

23   in proxy statements issued in 2021 and 2022.  Plaintiffs have not satisfied this requirement.

24   **III.    CONCLUSION**

25        For the foregoing reasons, this action should be dismissed with prejudice.

26

27
_____

28   [3]  Plaintiffs cite (at 7) one non-binding case stating that Section 14(a) does not require scienter. But as Defendants explained, that is incorrect given this Court's responsibility to narrowly construe Section 14(a)'s judicially created cause of action. *See* Mot. at 22 n.6.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM.  COMPLAINT
CASE NO. 4:22-cv-01470-YGR

1    Dated: February 15, 2024                         LATHAM & WATKINS LLP

2

3                                                     By:   /s/ Andrew B. Clubok
                                                          Andrew B. Clubok (pro hac vice)
4                                                          andrew.clubok@lw.com
                                                        Susan E. Engel (pro hac vice)
5                                                          susan.engel@lw.com
                                                        555 Eleventh Street, N.W., Suite 1000
6                                                       Washington, D.C. 20004-1304
                                                        Telephone: +1.202.637.2200
7
                                                        Melanie M. Blunschi (CA Bar No. 234264)
8                                                          melanie.blunschi@lw.com
                                                        Nicholas Rosellini (CA Bar No. 316080)
9                                                          nick.rosellini@lw.com
                                                        505 Montgomery Street, Suite 2000
10                                                      San Francisco, CA 94111
                                                        Telephone: +1.415.391.0600
11

12

13
                                                        *Attorneys for Defendants Meta Platforms, Inc.,*
14                                                      *Mark Zuckerberg, David Wehner, Sheryl*
                                                        *Sandberg, and Susan Li*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFS.' REPLY ISO MOT. TO DISMISS
SECOND AM. COMPLAINT
CASE NO. 4:22-cv-01470-YGR